IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RONALD MOORE, et al.      :      CIVIL ACTION

        : 

     vs.      : 

        : 

DIRECTSAT USA, LLC, et al.      :      No. 2:08-cv-03552

## ORDER

AND NOW, this 30th day of April 2009, upon consideration of Defendant DirectSat

USA, LLC's ("DirectSat") Motion to Dismiss (Doc. No. 8), Plaintiffs' Answer in Opposition

thereto (Doc. No. 17), Defendant DirectSat's Reply in further support thereof (Doc. No. 22),

Plaintiffs' Sur-Reply in further opposition thereto (Doc. No. 25), Defendants Superior Splicing,

LLC ("Superior Slicing"), David Mitchell ("Mitchell"), and Eric Irby's ("Irby") (collectively, the

"Superior Defendants") Motion to Dismiss (Doc. No. 31), Plaintiffs' Response in Opposition

thereto (Doc. No. 32), and Defendants Joseph J. Fumanti ("Fumanti") and L&F

Communications, Inc.'s ("L&F") (collectively, the "L&F Defendants") Motion to Dismiss (Doc.

No. 39),[1] it is hereby ORDERED that the Motions are GRANTED in part and DENIED in part as

follows:

1.      Defendants' Motions to Dismiss are GRANTED with respect to Plaintiffs' state

         law claims such that Counts Three, Four, Five, and Six are DISMISSED without

         prejudice.

---

[1]      Plaintiffs have not yet filed a response to the L&F Defendants' Motion to
Dismiss. However, because the L&F Defendants' Motion to Dismiss merely incorporates by
reference the arguments asserted by Defendant DirectSat and the Superior Defendants, Plaintiffs
have fully responded to all arguments raised by the L&F Defendants' Motion.

2.      Defendant DirectSat and the L&F Defendants' Motions to Dismiss for Lack of Employer-Employee Relationship are DENIED.

3.      Defendants' Motions to Dismiss for Plaintiffs' failure to file written consents are DENIED as moot.

4.      Defendant DirectSat's Motion to Dismiss any claim for retaliation is DENIED.

5.      The L&F Defendants' Motion to Dismiss any claim for retaliation is GRANTED such that this claim is DISMISSED without prejudice.

6.      Defendant DirectSat and the L&F Defendants' Motions to Dismiss are GRANTED with respect to Count Two, which alleges a cause of action pursuant to the Fair Labor Standards Act for failure to adequately maintain records, such that Count Two is DISMISSED with prejudice.

7.      The Superior Defendants and the L&F Defendants' Motions to Dismiss due to preclusion are DENIED without prejudice.

8.      Plaintiffs shall effectuate proper service of process over Defendant Mitchell on or before June 1, 2009.

9.      Defendant DirectSat's motion for a more definite statement is DENIED.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant DirectSat is engaged in the business of installing direct-broadcast-satellite home-receiver equipment in the homes of subscribers to DirecTV.  According to the Amended Complaint, to perform this work, DirectSat employs installers directly and also through agents such as Defendants L&F, Superior Splicing, and C.P. Installations, Inc. ("C.P.").  Plaintiffs in the instant action allege to be or have been directly employed by one or more of these companies.

All Plaintiffs allege to have been employees of Defendant L&F from May 2006 to July 2006. Plaintiffs Jose Alejandro Zapata ("Zapata") and Ricardo Bolano ("Bolano") allege to have been employees of Defendant Superior Splicing from January 2007 to July 2007, and Plaintiff Jose J. Rivera ("Rivera") alleges to have been an employee of Defendant Superior Splicing from May 2007 to October 2007. Plaintiff Ronald Moore ("Moore") alleges to have been an employee of Defendant C.P. from October 2007 to May 2008. Plaintiffs Zapata and Bolano have allegedly worked directly for Defendant DirectSat since May 2008, and Plaintiff Rivera has allegedly worked directly for Defendant DirectSat since June 2008. The Amended Complaint also alleges that DirectSat was a joint employer of Plaintiffs during the periods in which Plaintiffs worked for Defendants L&F, Superior Splicing, and C.P.

Plaintiffs bring the instant action to recover unpaid wages and overtime compensation allegedly owed to them by Defendants. Plaintiffs seek an opt-in class action for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq. (Am. Compl. ¶¶ 1, 151, 155.) Plaintiffs also seek an opt-out class action for violations of the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101 et seq., the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 et seq., and the Pennsylvania Administrative Code ("PAC"). (Id. at ¶¶ 2, 161, 163-64, 167-68, 170-71.)

Defendant DirectSat, the Superior Defendants, and the L&F Defendants now bring motions to dismiss Plaintiffs' Amended Complaint. Defendant C.P. and Defendant Rohn Zimmerman, Jr., ("Zimmerman") failed to timely answer, move, or otherwise respond, and default was entered against these Defendants. Defendant DirectSat also moves for a more definite statement within its Motion to Dismiss. The Superior Defendants further move for

dismissal of all claims against Defendant Mitchell based on Plaintiffs' failure to properly serve

process under Federal Rule of Civil Procedure 12(b)(5).

II.     LEGAL STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss brought pursuant to

Federal Rule of Civil Procedure 12(b)(6), we must accept as true all factual allegations set forth

in the complaint. See Malia v. General Electric Co., 23 F.3d 828, 830 (3d Cir. 1994). However,

"[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and a court "need not credit a complaint's

'bald assertions' or 'legal conclusions,'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)

(internal quotations omitted). In other words, "'stating . . . a claim requires a complaint with

enough factual matter (taken as true) to suggest' the required element." Phillips v. County of

Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556) (ellipses in

original). Therefore, a claim may be dismissed when the facts alleged and the reasonable

inferences drawn therefrom are legally insufficient to support the relief sought. See Pennsylvania

ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179-80 (3d Cir. 1988). The court may look to

the allegations made in the complaint, the exhibits attached to the complaint, and any documents

whose authenticity no party questions and whose contents are alleged in the complaint. Pryor v.

Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). Documents attached to a

defendant's Rule 12(b)(6) motion to dismiss may only be considered if they are referred to in the

plaintiff's complaint and if they are central to the plaintiff's claims. Id.

A complaint may also be dismissed for "insufficient service of process" pursuant to

Federal Rule of Civil Procedure 12(b)(5).  Fed. R. Civ. P. 12(b)(5).  Once an objection to service is made, the party making the service has the burden of demonstrating its validity.  <u>Suegart v. U.S. Customs Serv.</u>, 180 F.R.D. 276, 278 (E.D. Pa. 1998).  In considering a motion to dismiss for insufficient service of process, a court can look to matters outside the pleadings.  <u>In re Bulk (Extruded) Graphite Prods. Antitrust Litig.</u>, No. 02-6030, 2006 WL 1084093 (D.N.J. Apr. 24, 2006).  "Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint . . . or to simply quash service of process."  <u>Umbenhauer v. Woog</u>, 969 F.2d 25, 30 (3d Cir. 1992).

III.    DISCUSSION

A.    <u>Supplemental Jurisdiction over Plaintiffs' State Law Claims</u>

Plaintiffs allege that we have supplemental jurisdiction over their state law claims because those claims derive from a common nucleus of operative fact with Plaintiffs' claims under the FLSA.  (Am. Compl. ¶ 15.)  Defendants respond that we should nevertheless decline to exercise our supplemental jurisdiction because the opt-out approach to state law class actions under Federal Rule of Civil Procedure 23 is inherently incompatible with the opt-in approach of class actions under the FLSA.  (Def. DirectSat's Mem. Supp. Mot. Dismiss 7; Superior Defs.' Mem. Supp. Mot. Dismiss 12; L&F Defs.' Mot. Dismiss ¶¶ 1-2.)

As all parties in the instant action are either domiciled or have their principal place of business in Pennsylvania, we do not have diversity jurisdiction over Plaintiffs' state law claims.  Thus, in order to have subject matter jurisdiction over these claims, we must exercise supplemental jurisdiction.  A district court may exercise supplemental jurisdiction over a state law claim where the state claim shares a common nucleus of operative fact with the claim that

supports the court's original jurisdiction. 28 U.S.C. § 1367(a); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). In this case, Plaintiffs claim that Defendants' failure to pay wages and overtime compensation constitutes a violation of the FLSA, the WPCL, and the PMWA. Because these three statutes all address the conduct at issue here, the federal and state statutes are considered to be parallel laws. "Where 'the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious.'" De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003) (quoting Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995)). Even where a district court has supplemental jurisdiction, the district court may nevertheless "decline to exercise supplemental jurisdiction over a claim" where:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In De Ascencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003), the Third Circuit relied on subsections (1) and (2) of 28 U.S.C. § 1367(c) in finding that the district court had abused its discretion in exercising supplemental jurisdiction over the plaintiffs' WPCL claims. Similar to Plaintiffs in this case, the plaintiffs in De Ascencio brought an action for unpaid wages and sought certification of an opt-in class action under the FLSA and an opt-out class action under the WPCL. Id. at 303-04. The district court exercised supplemental jurisdiction over the plaintiffs' state law claims and certified the class. The Third Circuit reversed this decision as an abuse of discretion. Id. at 305, 312. In reaching this determination, the Third Circuit found in its

6

analysis under 28 U.S.C. § 1367(c)(1) that there were two novel issues of state law associated with application of the WPCL to the plaintiffs' claims—(1) "whether a WPCL action may rest on an implied employment contract," and (2) "whether the WPCL pertains to at will, non-collective bargaining employees."[2] Id. at 311.  Additionally, the Third Circuit determined in its analysis under 28 U.S.C. § 1367(c)(2) that the plaintiffs' federal claim was an appendage to the more comprehensive state law claim and that therefore the WPCL claim predominated over the plaintiffs' FLSA claim.  Id. at 312.

Although the Third Circuit noted that subsection (4) of 28 U.S.C. § 1367(c) may have been relevant to its supplemental jurisdiction analysis, the court never actually applied this subsection in its opinion in De Ascencio.  Id. at 309 n.12.  However, many district courts within this circuit have relied on section 1367(c)(4) in declining to exercise supplemental jurisdiction over a plaintiff's state law claims in similar cases.  These courts have found that an opt-in FLSA class action is "inherently incompatible" with an opt-out Rule 23 class action brought simultaneously in a single lawsuit in federal court.  Warner v. Orleans Home Builders, Inc., 550 F. Supp. 2d 583, 588 (E.D. Pa. 2008); Woodward v. Fedex Freight East, Inc., 250 F.R.D. 178, 182-83 (M.D. Pa. 2008); Ramsey v. Ryan Beck & Co., No. 07-635, 2007 WL 2234567, at *4 (E.D. Pa. Aug. 1, 2007); Otto v. Pocono Health Sys., 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006); Herring v. Hewitt Assocs., No. 06-267, 2006 WL 2347875, at *2 (D.N.J., Aug. 11, 2006).  But see Freeman v. Hoffmann-Laroche, Inc., No. 07-1503, 2007 WL 4440875, at *2 (D.N.J. Dec. 18,

---

[2]      Some courts applying De Ascencio maintain that these two novel questions of law remain unresolved by Pennsylvania courts.  See, e.g., Ramsey v. Ryan Beck & Co., No. 07-635, 2007 WL 2234567, at *4 (E.D. Pa. Aug. 1, 2007).  We have however identified a case from the Superior Court of Pennsylvania, Sullivan v. Chartwell Inv. Partners, 873 A.2d 710 (Pa. Super. Ct. 2005), that shed some light on these issues following the De Ascencio opinion.

2007) (declining to use "inherent incompatibility" as part of the court's supplemental jurisdiction analysis); Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726, 731-32 (M.D. Pa. 2007) (finding that, at the motion to dismiss stage, there was "no reason to conclude that the merely procedural differences presented" by the proposed federal and state class actions justified dismissal of the plaintiff's WPCL and PMWA claims). According to these courts, this inherent incompatibility constitutes a compelling reason to decline supplemental jurisdiction.

Upon consideration of these decisions, we find multiple reasons to decline the exercise of supplemental jurisdiction over Plaintiffs' state law claims. First, we find that Plaintiffs' state law claims predominate over their federal claims, thereby justifying dismissal of Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(2). In evaluating whether the exercise of supplemental jurisdiction is proper under section 1367(c)(2), "a court must examine the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice to determine whether the state claim constitutes the real body of the case." De Ascencio, 342 F.3d at 312; see also Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). Applying this standard in De Ascencio, the Third Circuit found that the district court "did not exercise sound discretion in granting supplemental jurisdiction over the [plaintiff's] WPCL action" brought simultaneously with a FLSA class action. De Ascencio, 342 F.3d at 312. The De Ascencio court based its decision on the "inordinate size of the state-law class, the different terms of proof required by the implied contract state-law claim, and the general federal interest in opt-in wage actions." Id.

Similar concerns exist in the present case. As an opt-out action, Plaintiffs' state law class

8

action will most likely have more members seeking relief than will Plaintiffs' opt-in class action under federal law. See id. at 310 ("Under most circumstances, the opt-out class will be greater in number, perhaps even exponentially greater."). According to the Third Circuit, although "[p]redomination under section 1367 generally goes to the type of claim, not the number of parties involved," differences in class numbers "may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog." Id. at 311. We acknowledge however that the size of the individual classes and the difference in size between those classes[3] will probably not approach that involved in De Ascencio. Moreover, we will not have more definite information regarding class size until the class certification stage. However, although the circumstances surrounding class size are not identical to De Ascencio, we believe that the likely disparity in class size is nevertheless relevant to our analysis for the reasons articulated by the Third Circuit.

Even without consideration of this factor, we would decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2) based on other factors recognized by the De Ascencio court. One such factor examined by the Third Circuit was the different terms of proof required by a FLSA claim and a WPCL claim based on an implied contract:

> In cases involving implied contracts of employment, the litigant will be able to reach the jury only if he can clearly show that he and the

---

[3]     In De Ascencio, the FLSA class consisted of 447 members, while the WPCL class consisted of 4100 members. 342 F.3d at 310. This action currently has four Plaintiffs who have consented to suit, while the Amended Complaint alleges that, "[o]n information and belief, DirectSAT employs [or] employed separately and/or jointly with sub-contractors, hundreds, if not thousands, of similarly situated employees throughout the United States." (Am. Compl. ¶ 113.)

employer intended to form a contract. Because the FLSA claim does not require an intent to form a contract, individual questions of implied contract formation with respect to each member of the WPCL class might conceivably predominate over the issues common to the claims of the FLSA plaintiffs.

Id. To the extent that Plaintiffs have a claim under the WPCL, their claim rests on a theory of implied contract. (Pls.' Br. Opp'n Def. DirectSat's Mot. Dismiss 11-13.) Thus, the same concerns raised by the Third Circuit in De Ascencio apply here.

There is also the same general federal preference for opt-in class actions that the Third Circuit encountered and deemed relevant in De Ascencio. By expressing a preference for opt-in actions, Congress aimed "to limit[] private FLSA plaintiffs to employees who asserted claims in their own right and free[] employers of the burden of representative actions." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989). This opt-in requirement additionally ensured that "only employees who affirmatively opt in will be bound by the judgment." Woodard, 250 F.R.D. at 185. The Third Circuit described this preference for opt-in class actions under the FLSA as a "crucial policy decision" by Congress and concluded that it was a factor in finding that the state claim predominated. De Ascencio, 342 F.3d at 311. Thus, we also consider Congress's expressed preference for an opt-in approach to FLSA class claims as a factor in our decision to decline supplemental jurisdiction over Plaintiffs' state law claims.

Because any supplemental jurisdiction analysis is necessarily case specific, there are other factors relevant to our section 1367(c)(2) discussion that the Third Circuit did not expressly consider in De Ascencio. See Borough of W. Mifflin, 45 F.3d at 788 (requiring a court to examine "the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without

prejudice). Thus, we note here that, while the plaintiffs in <u>De Ascencio</u> only pursued one claim under state law, Plaintiffs in the instant matter bring several state claims, many of which have no federal counterpart. For example, Plaintiffs assert a claim under state law for Defendants' failure to maintain accurate records, a claim that Plaintiffs acknowledge cannot be asserted under the FLSA. (Pls.' Br. Opp'n Def. DirectSat's Mot. Dismiss 13.) Plaintiffs also make an unjust enrichment claim under state law. The assertion of such causes of action broaden the scope of the state issues in relation to the federal issues and create different terms of proof between the state and federal class actions. These consequences lend further support to our decision to decline supplemental jurisdiction.

We further find that our decision to dismiss Plaintiffs' state law claims will not prejudice their ability to reassert those claims in state court. We understand that our decision may lead to the institution of two parallel proceedings, one in federal court and one in state court. Nevertheless, we believe that the interest in separating the actions is strong enough to justify this result.

For these reasons, we find that Plaintiffs' state law claims predominate over the federal claims. Therefore, we decline to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(2).

Plaintiffs assert that it is premature for us to make such a determination under section 1367(c)(2) because we must wait until class certification. (Pls.' Br. Opp'n Def. DirectSat's Mot. Dismiss 9.) We disagree. The Third Circuit did not set such an arbitrary limitation in their opinion in <u>De Ascencio</u>, but rather made clear that "a district court has the responsibility to manage complex litigation." 342 F.3d at 308; <u>see also</u> <u>Warner</u>, 550 F. Supp. 2d at 589-90

(applying <u>De Ascencio</u> in resolving a motion to dismiss pursuant to 28 U.S.C. § 1367(c)(2)).

Having engaged in a case-specific analysis and having concluded that we should decline

supplemental jurisdiction over Plaintiffs' state law claims, we should not have to wait until class

certification to manage this litigation when it is apparent that we should not exercise

supplemental jurisdiction. Such delay would be contrary to the interests of judicial economy and

fairness to the parties.

Even if <u>De Ascencio</u> somehow precluded us from relying on 28 U.S.C. § 1367(c)(2) at

the motion to dismiss stage, we would decline to exercise supplemental jurisdiction over

Plaintiffs' state law claims under 28 U.S.C. § 1367(c)(4) based on an "inherent incompatibility"

between Plaintiffs' opt-out class action under state law and Plaintiffs' opt-in class action under

federal law. See <u>Woodard</u>, 250 F.R.D. at 184 n.5 ("[N]othing in [<u>De Ascencio</u>] precludes [a

court] from declining supplemental jurisdiction prior to a class certification motion when it is

clear that section 1367(c)(4) is implicated."). By imposing an opt-in requirement for FLSA class

actions, Congress made a "crucial policy decision." <u>De Ascencio</u>, 342 F.3d at 311. Congress's

purpose in implementing this opt-in approach was to "limit[] private FLSA plaintiffs to

employees who asserted claims in their own right and free[] employers of the burden of

representative actions." <u>Hoffmann-La Roche</u>, 493 U.S. at 173. Congress also hoped that this

requirement would "ensure that 'absent individuals would not have their rights litigated without

their input or knowledge.'" <u>Ellis v. Edward D. Jones & Co.</u>, 527 F. Supp. 2d 439, 449 (W.D. Pa.

2007) (quoting <u>Otto</u>, 457 F. Supp. 2d at 524).

"[W]here the [state] claim mirrors the FLSA claim and arises from the same conduct, but

does not require class members to affirmatively opt in to the action, the state law conflicts with

the FLSA and stands as an 'obstacle to the accomplishment of the full purposes and objectives of Congress.'" Woodard, 250 F.R.D. at 186 (quoting Ellis, 527 F. Supp. 2d at 452-53). By maintaining "the FLSA claim and parallel state claim in the same action, where both claims are predicated on the same conduct of the defendant," there exists "a significant risk that employees, who neither opt in to the FLSA collective action nor opt out of the state law class action, will be collaterally estopped from asserting FLSA claims in their own right." Id. (quoting Ellis, 527 F. Supp. 2d at 446-48). Thus, simultaneous litigation of identical claims under parallel federal and state statutes would "frustrate congressional intent and circumvent [the FLSA's] opt-in requirement." Id.

In the instant action, Plaintiffs seek certification of one opt-out class action and one opt-in class action for the redress of identical conduct by Defendants under parallel federal and state laws. Because we have the discretion to decline supplemental jurisdiction over Plaintiffs' state law claims and because we believe that permitting these two class actions to proceed simultaneously would interfere with congressional goals, we find that dismissal would be justified pursuant to 28 U.S.C. § 1367(c)(4).

Accordingly, we dismiss Plaintiffs' state law claims without prejudice so that they may be re-filed in state court.

B.       Employer-Employee Relationship

The Amended Complaint alleges the specific time periods during which Plaintiffs were employed by each Defendant. Defendant DirectSat and the L&F Defendants state in their Motions to Dismiss that Plaintiff's claims should be limited by these terms of employment in

recovering allegedly unpaid wages and overtime compensation.[4]  Defendant DirectSat seems to

specifically object to the fact that the Amended Complaint asserts that DirectSat should be held

liable for all wages and overtime compensation owed to Plaintiffs that was allegedly unpaid by

Defendants Superior Splicing, L&F, and C.P.

Plaintiffs' claims pursuant to the FLSA are based on sections of those statutes that give

employees the right to bring suit against their employers.  FLSA, 29 U.S.C. § 216(b).  Thus, it

necessarily follows that Plaintiffs may only assert their claims against their employers and only

for the terms of their employment with those employers.  However, an employee may have more

than one employer as defined by the FLSA.  See FLSA, 29 U.S.C. § 203(d); Donovan v.

DialAmerica Mktg., Inc., 757 F.2d 1376, 1388 (3d Cir. 1985).  The Amended Complaint alleges

that, for the periods during which Plaintiffs were employed by Defendants Superior Splicing,

L&F, and C.P., Defendant DirectSat was a joint employer of Plaintiffs under the FLSA.

Defendant DirectSat asserts that this characterization is a misrepresentation.  (Def. DirectSat's

Mem. Supp. Mot. Dismiss 13.)  But in resolving a motion to dismiss, we must accept Plaintiffs'

factual allegations as true.  Therefore, we will not limit Plaintiffs' claims based solely on

Defendant DirectSat's assertion that Plaintiffs have misrepresented the facts.

Thus, all Plaintiffs may seek wages and overtime compensation that were unpaid by the

L&F Defendants during their employment from May 2006 to July 2006.  (Am. Compl. ¶¶ 4, 20,

32, 45, 58.)  Plaintiffs Zapata and Bolano may seek wages and overtime compensation that were

unpaid by the Superior Defendants during their employment from January 2007 to July 2007.

---

[4]        Defendants also assert that Plaintiffs have failed to file the consent forms required
by section 216(b) of the FLSA.  However, Plaintiffs did file these forms in November 2008, and
therefore the issue is now moot.

(Id. at ¶¶ 33, 46.) Plaintiff Rivera may seek wages and overtime compensation that were unpaid by the Superior Defendants during his employment from May 2007 to October 2007. (Id. at ¶ 59.) Plaintiff Moore may seek wages and overtime compensation that were unpaid by Defendants C.P. and Zimmerman during his employment from October 2007 to May 2008. (Id. at ¶ 21.) From these factual allegations, we note that some Plaintiffs have no claims at all against certain Defendants. Thus, as Plaintiff Moore was never employed by Defendant Superior Splicing, Plaintiff Moore has no claim against the Superior Defendants upon which relief may be granted. Similarly, Plaintiffs Zapata, Bolano, and Rivera were never employed by Defendant C.P., and therefore, these Plaintiffs have no claims against Defendant C.P. and Defendant Zimmerman upon which relief may be granted. But as Plaintiffs have alleged that Defendant DirectSat was a joint employer of Plaintiffs during the periods that Plaintiffs were directly employed by Defendants Superior Splicing, L&F, and C.P. as described above, all Plaintiffs have asserted claims against DirectSat for the periods of employment alleged.

C.     Cause of Action for Retaliation under the FLSA

Defendant DirectSat claims that Plaintiffs have not sufficiently pleaded a cause of action for retaliation under the FLSA. Defendant DirectSat's assertion is based on its argument that it was not an employer of Plaintiffs during the relevant periods of alleged retaliation. But as described above, Plaintiffs allege that Defendant DirectSat was their joint employer during those periods, and therefore, we cannot dismiss Plaintiffs' retaliation claim for this reason. We also find that the Amended Complaint makes factual allegations that would adequately support a cause of action for retaliation against Defendant DirectSat. (Am. Compl. ¶¶ 104-107.)

The L&F Defendants incorporate DirectSat's retaliation argument by reference.

15

Although the Amended Complaint alleges that Plaintiffs initiated suit against both DirectSat and

L&F, it only claims that DirectSat engaged in retaliatory behavior in response.  (Id.)  Thus, we

agree with the L&F Defendants that the Amended Complaint fails to state a claim for retaliation

under the FLSA against them.

     D.     <u>Cause of Action for Failure to Maintain Adequate Records under the FLSA</u>

Plaintiffs' Amended Complaint asserts a private cause of action for an employer's failure

to properly maintain records under the FLSA.  In their Brief in Opposition to Defendant

DirectSat's Motion to Dismiss, Plaintiffs acknowledge that no such cause of action exists.  (Pls.'

Br. Opp'n Def. DirectSat's Mot. Dismiss 13.)  Thus, any cause of action against DirectSat for

failure to maintain records under the FLSA must be dismissed.[5]

     E.     <u>Claim Preclusion</u>

The Superior Defendants state that Plaintiffs' claims must be dismissed against them

because of claim preclusion.  According to the Superior Defendants, Plaintiffs have asserted a

claim under the WPCL and claims for breach of contract and unjust enrichment against

Defendants Superior Splicing and Mitchell in the Court of Common Pleas of Philadelphia

County.  (Superior Defs.' Mem. Supp. Mot. Dismiss 7 n.6; Superior Defs.' Mot. Dismiss, Ex. A.)

The Superior Defendants assert that a default judgment was entered against them in that action,

and that therefore Plaintiffs are precluded from bringing the instant action.  (Superior Defs.'

Mem. Supp. Mot. Dismiss 7 n.7; Superior Defs.' Mot. Dismiss, Ex. B.)  Plaintiffs respond by

_____

[5]     Plaintiffs claim that Count Five asserts a cause of action for failure to properly maintain records under the FLSA.  (Pls.' Br. Opp'n Def. DirectSat's Mot. Dismiss 13.)  Count Five however is based on the PMWA and the Pennsylvania Administrative Code.  Count Two appears to represent the relevant cause of action.

16

arguing that we cannot look at matters outside of the pleading and that, even if we could, we should also know that Defendants Superior Splicing and Mitchell have sought to set aside the default judgment in the state court action. (Pls.' Resp. Opp'n Superior Defs.' Mot. Dismiss ¶¶ 4-6; Pls.' Resp. Opp'n Superior Defs.' Mot. Dismiss, Ex. C.)

Even if we did look at the default judgment and underlying complaint attached to the Superior Defendants' Motion, we would not find claim preclusion at this time. In determining the preclusive effect of the Pennsylvania state court judgment, we must examine Pennsylvania law. Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). Under Pennsylvania law, although a judgment by default can constitute "res judicata and [be] conclusive in its application to a defaulting defendant," Signora v. Liberty Travel, Inc., 886 A.2d 284, 290 (Pa. Super. Ct. 2005) (citing Zimmer v. Zimmer, 326 A.2d 318, 320 (Pa. 1974)), this result only occurs once "all direct appeals are exhausted from the entry of such a judgment," id. (quoting Fox v. Gabler, 626 A.2d 1141, 1143 (Pa. 1993)). Based on the submissions by the Superior Defendants and Plaintiffs, such appeals are not yet exhausted, and we should not consider the default judgment's preclusive effect before exhaustion occurs.[6]

F.    Failure to Serve

Defendant Mitchell asserts that he was not properly served when Plaintiffs handed a copy of the Summons and Amended Complaint to Defendant Irby. (Superior Defs.' Mem. Supp. Mot. Dismiss 26; Superior Defs.' Mot. Dismiss, Ex. D.) Pursuant to Federal Rule of Civil Procedure

---

[6]    The L&F Defendants attempt to incorporate the Superior Defendants' argument by reference, though they assert that Plaintiffs' claims are barred by issue preclusion. (L&F Defs.' Mot. Dismiss ¶ 9.) They have no support for this bald assertion, and therefore we also deny their motion to dismiss based on any preclusion argument.

4(e):

> An individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Because this Court is located in Pennsylvania and because service was attempted in Pennsylvania, we may look to Pennsylvania law in determining what else constitutes proper service pursuant to Federal Rule of Civil Procedure 4(e)(1) as described above.

In Pennsylvania, process may be served:

> (1) by handing a copy to the defendant; or (2) by handing a copy (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or (iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Pa. R. Civ. P. 402(a).

According to the Return of Service, the process server left copies of the summons and complaint with Defendant Irby at 40 Prestwick Court in Limerick, PA in an attempt to serve Defendant Mitchell. (Superior Defs.' Mot. Dismiss, Ex. D.) Thus, Defendant Mitchell was not personally served. Nor was service left at his residence, dwelling, or usual place of abode as 40 Prestwick Court corresponds to the address of Defendant Superior Splicing. (Superior Defs.'

Mot. Dismiss, Ex. F.)  Because the summons and complaint were left at the usual place of business of Defendant Superior Splicing, proper service over Defendant Mitchell occurred only if service was sufficient under Pennsylvania Rule of Civil Procedure 402(a)(2)(iii), which permits service at an individual's office or place of business.

According to Pennsylvania courts, service at an "'office or usual place of business of the defendant' requires that the defendant have 'more proprietary responsibility and control over the business than that possessed by the average employee.'" Slater v. Goldberg, 402 A.2d 1073, 1074 (Pa. Super. Ct. 1979) (quoting Pincus v. Mut. Assurance Co., 321 A.2d 906, 910 (Pa. 1974) (construing Rule 1009, the predecessor to Rule 402)).  Defendant Mitchell states in an affidavit that he is merely an independent contractor for Defendant Superior Splicing, which would not qualify as a person with a proprietary interest.  (Superior Defs.' Mot. Dismiss, Ex. F.) Plaintiffs' main argument in response is that we cannot look at matters outside the pleadings in resolving a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5).  (Pls.' Resp. Opp'n Superior Defs.' Mot. Dismiss ¶ 3.)  This is not true.  In fact, motions to dismiss for insufficient service of process fall in that category of motions which permit, and in some circumstances require, examination of matters outside the pleadings.  Trueposition, Inc. v. Sunon, Inc., No. 05-3023, 2006 WL 1686635, at *3 (E.D. Pa. June 14, 2006).  Thus, this argument fails.

Plaintiffs then reference Defendants Mitchell and Superior Splicing's motion for post-trial relief/petition to open from the state court proceedings in an attempt to show that these Defendants have attempted to evade service.  (Pls.' Resp. Opp'n Superior Defs.' Mot. Dismiss ¶ 9.)  This motion discussed by Plaintiffs chronicles a series of moves that Superior Splicing

underwent around December 2008.  (Pls. Resp. Opp'n Superior Defs.' Mot. Dismiss, Ex. C.)

However, Plaintiffs do not explain how these moves interfered with their service attempts.  See

Beckerman v. Susquehanna Tp. Police & Admin., 254 Fed. App'x 149, 154 (3d Cir. 2007).

After all, Plaintiffs seemed to be able to effect service on Defendants Irby and Superior Splicing

without issue.  But most importantly, Plaintiffs need good service over Defendant Mitchell.  A

defendant's evasion may create good cause for a delay in service, but it does not excuse proper

service.  See Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995).

Because these arguments fail and because these arguments constitute Plaintiffs only

response to Defendant Mitchell's motion to dismiss for insufficient service of process, Plaintiffs

have not met their burden in rebutting Mitchell's assertion that he had no proprietary interest in

Superior Splicing.  We therefore conclude that service of process over Defendant Mitchell was

insufficient.  Although we find that service of process has been insufficient, we believe that

service of process over Defendant Mitchell can reasonably be obtained.  Therefore, dismissal of

the complaint would be inappropriate, see Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992),

and we will give Plaintiffs leave to effect proper service.

G.    More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e)

Defendant DirectSat asks that Plaintiffs be required to file a more specific pleading

pursuant to Federal Rule of Civil Procedure 12(e).  According to Federal Rule of Civil Procedure

12(e), a motion for a more definite statement is allowed where the complaint "is so vague or

ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  We agree

that Plaintiffs' Amended Complaint is not artfully drafted.  However, we do not believe that the

grounds asserted by Defendant DirectSat in support of their motion for a more definite statement

prevented Defendants from reasonably preparing a response. Defendant DirectSat was able to sufficiently address Plaintiffs' Amended Complaint in its Motion to Dismiss, and we were able to resolve Defendant DirectSat's Motion to Dismiss. Thus, we find that Plaintiffs' Amended Complaint is sufficiently detailed to satisfy federal pleading requirements.

IV.    CONCLUSION

Accordingly, Defendant DirectSat's Motion to Dismiss (Doc. No. 8), the Superior Defendants' Motion to Dismiss (Doc. No. 31), and the L&F Defendants' Motion to Dismiss (Doc. No. 39) are granted in part and denied in part as follows:

1.    Defendants' Motions to Dismiss are GRANTED with respect to Plaintiffs' state law claims such that Counts Three, Four, Five, and Six are DISMISSED without prejudice.

2.    Defendant DirectSat and the L&F Defendants' Motions to Dismiss for Lack of Employer-Employee Relationship are DENIED.

3.    Defendants' Motions to Dismiss for Plaintiffs' failure to file written consents are DENIED as moot.

4.    Defendant DirectSat's Motion to Dismiss any claim for retaliation is DENIED.

5.    The L&F Defendants' Motion to Dismiss any claim for retaliation is GRANTED such that this claim is DISMISSED without prejudice.

6.    Defendant DirectSat and the L&F Defendants' Motions to Dismiss are GRANTED with respect to Count Two, which alleges a cause of action pursuant to the Fair Labor Standards Act for failure to adequately maintain records, such that Count Two is DISMISSED with prejudice.

7.      The Superior Defendants and the L&F Defendants' Motions to Dismiss due to

        preclusion are DENIED without prejudice.

8.      Plaintiffs shall effectuate proper service of process over Defendant Mitchell on or

        before June 1, 2009.

9.      Defendant DirectSat's motion for a more definite statement is DENIED.



                                        BY THE COURT:

                                        /S/LEGROME D. DAVIS

                                        Legrome D. Davis, J.